Unfortunately, today's majority opinion destroys the last vestige of protection formerly afforded the familial relationship. Because I believe this Court should not abolish an unemancipated minor's immunity from being sued in tort by her parent, I respectfully dissent. This Court's ruling in GlaskoxBy And Through Denton v. Glaskox, 614 So.2d 906 (Miss. 1992) (Dan M. Lee, Dissenting), was manifestly against sound public policy and well-established caselaw that sought to preserve family relationships in this state. Much of what I wrote inGlaskox holds true in the case sub judice and is certainly relevant to the current discussion.
While the subject of parental immunity has been the focus of much litigation throughout the United States, few cases have expressly discussed the issue of a child's liability to her parent in tort. Of these, some have concluded that the suit may lie only if the child is emancipated. See Carricato v.Carricato, 384 S.W.2d 85, 87-88 (Ky. 1964); Fitzgerald v.Valdez, 77 N.M. 769, 427 P.2d 655 (1967). However, some states have permitted such suits against unemancipated minors. SeeKirchner v. Crystal, 15 Ohio St.3d 326, 15 OBR 452,474 N.E.2d 275 (1984); Tamashiro v. De Gama, 51 Haw. 74, 450 P.2d 998
(1969).
Nonetheless, over time, the greater number of cases dealing with the issue of unemancipated *Page 488 
minor's liability to her parent in tort have been decided in favor of immunity. See, e.g., Harlan Natl. Bank v. Gross,346 S.W.2d 482 (Ky. 1961); Thompson v. Thompson, 264 S.W.2d 667
(Ky. 1954); Latz v. Latz, 10 Md. App. 720, 272 A.2d 435 (1971);Nahas v. Noble, 77 N.M. 139, 420 P.2d 127 (1966); Hill v.Graham, 424 P.2d 35 (Okla. 1967); Stitzinger v. StitzingerLumber Co., 187 Pa. Super. 453, 144 A.2d 486 (1958). These cases have all recognized the value society places upon protecting the family relationship from stress placed upon it when a parent sues a child in tort. I am inclined to follow the weight of authority and rationale employed in these cases in the case sub judice.
Historically, several reasons have been offered in support of parental immunity. The majority's opinion outlines these reasons and summarily dismisses them. Nevertheless, two of these have special application to the case at bar. They are: (1) the preservation of the peace and harmony of the family, and (2) the prevention of fraud and collusion made possible by the existence of liability insurance. Yet another consideration is the idea that it is inconsistent for an individual to occupy the role of parent and guardian to a child, thereby being entrusted with the child's care, and to simultaneously pursue an action for damages against that child. Nahas v. Noble, 420 P.2d at 128. All of the foregoing are valid reasons for continuing to recognize the immunity we have afforded children.
Likewise, it should not matter that in the case at bar the suit was filed against the child after the child reached the age of twenty-one. In Brown v. Parker, 375 S.W.2d 594 (Mo. App. 1964), the minor was unemancipated at the time of the accident and at the time the suit was filed, but had reached the age of majority before the answer was filed. It was argued in Brown that the parent's disability to sue disappeared upon the defendant's reaching the age of twenty-one prior to trial. It was further argued that the rule prohibiting the parent's action against the child should not apply since the basis for the rule, maintenance of the family relationship, had vanished. The Court in Brown
rejected this argument and stated:
 However logical such an argument may be, the same considerations of public policy prevent our adopting it. In the first place the effect of such a ruling would be to allow a parent to sue an unemancipated minor child providing he could keep the case alive until after the child reaches legal age. Such a state of events would clearly violate the sound considerations upon which the rule is based. The family relationship would be disturbed during the time the parent waited for the child to become of age.
Brown, 375 S.W.2d at 604. This passage recognizes the value that society places upon maintaining the family relationship and also recognizes that allowing a guardian to sue their ward is directly contrary to sound public policy.
In the case at bar, as well as in Glaskox, supra, we have forsaken the value society places on protecting the family relationship. Instead, we have elevated our ever increasing thirst to expand the pool of possible defendants over a compelling societal interest. In this day and time, we should be doing all that we can to insure the survival of the family instead of continually tearing it apart piece by piece. Accordingly, I respectfully dissent.
HAWKINS, C.J., joins this opinion.