Robert L. BLOUNT, d/b/a AIRE-WAY
REAL ESTATE AGENCY *v*. Janice McCURDY et al

CA 79-168                    593 S.W. 2d 468

Opinion delivered January 9, 1980
Released for publication February 13, 1980

*Paul Petty,* for appellant.

*Lightle,. Beebe & Raney,* by: *J. E. Lightle, Jr.* and *A. Watson Bell* and *Hoyt Thomas,* for appellees.

MARIAN F. PENIX, Judge. This case was appealed to the Arkansas Supreme Court and by that court assigned to the Arkansas Court of Appeals pursuant to Rule 29(3).

Appellant, Robert L. Blount, d/b/a Aire-way Real Estate Agency, sold certain real property, including a house and its contents, to appellee Janice McCurdy. Blount had previously owned the property and had sold same to Terry and Holly Roberson on a contract of sale. When Blount acted as agent for the Robersons in selling to McCurdy he did not reveal he still had an interest in the property in that Robersons still owed him $1,000 on the sales price. Robersons were not present September 23, 1977, the closing date. The contract had been signed by the Robersons who had moved to Texas. On September 23 McCurdy made a down payment of $1,850 and signed the contract. The contract provided the buyer was to assume sellers' insurance payments. At the closing, Pat Wolters, Blount's agent, handed McCurdy an envelope containing an insurance policy, and stated she thought it was paid up. The term on the policy was from October 21, 1977 to October 21, 1978. The face amount was $8,000 on the house and $3,000 on its contents. In December 1977 Blount received notice in the mail the policy was being cancelled for non-payment of premiums. Blount testified he made an attempt to notify McCurdy by telephoning McCurdy's ex-husband, Doug Merritt. Merritt denied ever having received notice from Blount the policy was being

cancelled. Blount testified he sold the property to the Robersons as an individual and not for his real estate firm. He also stated he was given notice of the lapse of the insurance policy because he was the mortgagee, and such notice indicated it had also been mailed to Robersons.

In February, 1978, McCurdy's house burned. She discovered there was no insurance coverage. Because of this fire loss she defaulted on her payments to the Robersons.

McCurdy sued Blount and the Robersons alleging she was damaged in the amount of $8,000 loss of improvements and $3,000 loss of contents, because of her detrimental reliance in respect to insurance coverage and the failure of each of the defendants to notify her of cancellation of the insurance. McCurdy asks that the Robersons be enjoined and restrained from declaring a default in McCurdy's contract of sale and from dispossessing her from the property, in order to avoid irreparable harm and damage to McCurdy. The Robersons filed a counterclaim against McCurdy for non-payment of the installment contract. Also they filed a cross-complaint against Blount alleging damages suffered because of their reliance upon Blount's representations the insurance policy was paid or would be paid by McCurdy.

After hearing all the testimony and weighing all the evidence the trial judge entered a decree awarding judgment for damages to McCurdy and to the Robersons against Blount for the sum of $8,000 reduced by $1,000 still owing Blount from the Robersons under their original contract and an additional sum of $2,000 against Blount in favor of McCurdy for the unscheduled personal property lost in the fire.

## I.

Blount contends the court erred in permitting parol evidence on behalf of McCurdy to modify the essential terms of a written contract. The terms being ". . . and buyer agrees to assume seller's insurance payments from date as above written and be responsible for the property as of same date." The dates on the policy were "from October 21, 1977 to October 21, 1978."

It is well recognized parol evidence cannot be introduced to change or alter a contract in writing. However, our Supreme Court has stated many times oral testimony is competent when ambiguity and uncertainty exist in the contract for the purpose of resolving confusion. *Kyser* v. *T. M. Bragg & Sons,* 228 Ark. 578, 309 S.W. 2d 198 (1958). The testimony may relate to the circumstances attendant to the execution of the written contract, the relationship of the parties, and evidence of conversations. *Jefferson Square Inc.,* v. *Hart Shoes Inc.,* 239 Ark. 129, 388 S.W. 2d 902 (1965); *Peevy* v. *Bell,* 255 Ark. 663, 501 S.W. 2d 767 (1973); *Kerby* v. *Field,* 183 Ark. 714, 38 S.W. 2d 308 (1931).

The contract is silent on the matter of at what period of time the buyer's obligation to make insurance payment began — was it October 21, 1977 or October 21, 1978? McCurdy's testimony reveals she understood perfectly she was to assume the insurance payments but she also understood the payments would not begin until the policy dated October 21, 1977 through October 21, 1978 expired. Exactly when she was to begin the insurance payments is not covered in the contract. The parol evidence rule was not violated because any testimony related to when she was to begin payments is obviously concerned with a collateral, independent fact, or with an ambiguity about which the contract is uncertain. The testimony concerning the obligation to assume sellers' insurance premiums clause of the contract was not introduced to vary or contradict the written document but was concerned with matters not embraced within the language of the convenant and to explain uncertainties in the document. *Lane* v. *Pfeifer,* 264 Ark. 162, 568 S.W. 2d 212 (1978).

Initially Blount's agent misled McCurdy into believing the insurance was paid up until October 1978. McCurdy relied upon Blount's agent's statement the insurance was paid up. This reliance was certainly to her detriment. The rule of detrimental reliance applies not only to brokers but to laymen, and all members of society who deal in commercial transactions with their fellowmen. When it was discovered it was not paid past October 1977 no attempt was made to be certain McCurdy knew such fact.

McCurdy was entitled to rely upon the representation the insurance was in force until October 21, 1978 and the premiums had been paid for such period. McCurdy and the Robersons are entitled to the amount of their loss that would have been paid under the policy of insurance, this sum being $8,000 upon the residence, reduced however, by the sum of $1,000 which is the amount due Blount upon his contract of sale to the Robersons, or a net amount of $7,000 to be allocated $5,750 to the Robersons and $1,250 to McCurdy. He also correctly found the value of McCurdy's unscheduled personal property was $2,000 which amount McCurdy was entitled to recover from Blount. The Chancellor further ordered Blount to execute and deliver a warranty deed to the Robersons and the Robersons to execute and deliver a warranty deed to McCurdy.

## II

Blount contends the court erred in its determination of damages. The court found as a matter of law McCurdy and the Robersons were entitled to the amount which would have been paid under the policy. The house was insured for $8,000. It was totally destroyed. $8,000 is the correct amount under the Arkansas Valued Policy Law, Ark. Stat. Ann. § 66-3901 (Repl. 1966); *Hensely* v. *Farm Bureau Mutual Ins. Co.,* 243 Ark. 408, 420 S.W. 2d 76 (1967). This statute applies only to an insurance company. However, the policy amount, which would have been owed to the loss payee, is evidence of the property's value. McCurdy lost the amount of the policy due to her reliance upon the agent's misrepresentations.

It was disputed the amount owed Blount on his contract with the Robersons was $1,000. McCurdy owed Robersons $5,570. The chancellor correctly determined $5,570 was to be paid to the Robersons and $1,250 to McCurdy.

As to the issue of damages for destruction of the contents of the house it is necessary to prove the value of the personal property destroyed. Ms. Roberson testified *without objection* the value was at least $3,000. Ms. McCurdy testified as to the contents and that she had put in a new

refrigerator and a complete new livingroom suite. Mr. Blount testified the contents were worth $1,000. Neither of the witnesses' testimony as to value was objected to. Ms. Roberson was qualified to express an opinion. The court certainly had a right to base its judgment on the testimony before it. The court found the value of the contents to be $2,000.

If this case is based upon damages by reason of detrimental evidence, upon whom did McCurdy and the Robersons rely? Blount and his agents. Their detriment was the amount lost as a result of the policy not being in force. Blount did not object to the value testimony in the lower court. He may not do so, for the first time, on appeal.

Affirmed.

WRIGHT, C.J., and NEWBERN, J., dissent.

ERNIE E. WRIGHT, Chief Judge, dissenting. I disagree with the majority opinion upholding the decree of the trial court awarding judgment against appellant for the fire loss. The real estate had been sold to appellee McCurdy through appellant as broker for the sellers. The contract of sale clearly stated, "Buyer agrees to assume seller's insurance payments from date as above written and be responsible for the property as of same date." The date of the contract referred to was September 20, 1977.

At closing on September 23, 1977 a sales agent for the broker handed the buyer an insurance policy. She testified she told the buyer, "This is your insurance policy. — I told the lady I thought the insurance was paid up." The policy carried the names of the sellers as the insured with a mortgage clause in favor of the broker who held a mortgage against the property. The buyer's name did not appear in the policy and the policy term was from October 21, 1977 to October 21, 1978.

The house burned in February, 1978, and the policy had been cancelled prior to the loss for nonpayment of premium.

In my view the buyer had a contractual duty to see that insurance coverage was in effect on the property from the

date of closing. She did not contact the local insurance agent who issued the policy. She did not check to see if her name appeared in the policy and she was provided no receipt or documentary evidence showing the premium had been paid on the policy that was to take effect some weeks subsequent to closing.

The record does not reveal any deliberate attempt on the part of any one to deceive the appellee as to the insurance. The appellee failed to act in a reasonably prudent way to see that insurance was in effect and the insurance requirement met.

There is no ambiguity in the provision in the contract requiring the buyer to pay the insurance premium and be responsible for the property as of the contract date, September 20, 1977.

The trial court held as a matter of law the appellant broker had a fiduciary duty to the appellee buyer. It is undisputed appellant was agent for the seller and there is no evidence he charged appellee McCurdy for servies either as a broker or attorney. I see no basis for the conclusion appellant had a fiduciary duty to appellee. He was only required to deal fairly with appellee, and there is no evidence he did otherwise.

I would reverse, and am authorized to state that NEW-BERN, J., joins in this dissent.